UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY M. RITTEN, M.D.,

    Plaintiff,

v.

HURON MEMORIAL HOSPITAL, INC., ET AL.,

    Defendants.
    _____/

Case No. 04-73336

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) BASED UPON EXPIRATION OF THE APPLICABLE STATUTE OF LIMITATIONS [8]**

Plaintiff's complaint seeks damages and injunctive relief and alleges that Defendants Huron Memorial Hospital ("Hospital") and James Garner violated: (1) the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §§ 1395dd, *et seq.*, by causing Plaintiff, who claims whistleblower status under § 1395dd(i), to suffer personal injury, damages and harm as a result of Defendants' wrongful reprimand of him in May 1999 for refusing to authorize the transfer of an individual with an emergency medical condition that had not been stabilized and as a result of Defendants' subsequent wrongful publication of such reprimand (Compl., Count I); (2) Michigan's common law concerning tortious interference with business expectations (Compl., Count II); and Michigan's common law concerning defamation (Compl., Count III).

This matter is now before the Court on Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), based upon expiration of the applicable statute of limitations. For

the reasons stated below, this Court GRANTS Defendants' motion, dismisses Plaintiff's EMTALA claims with prejudice and declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

**I.     Facts**

The central argument in Defendants' motion is that Plaintiff's EMTALA claims are barred under EMTALA's two-year statute of limitations, 42 U.S.C. § 1395dd(d)(2)(C). The following allegations in Plaintiff's complaint are relevant for the Court's determination of this core issue.

From 1995 until September 26, 1999, Plaintiff maintained medical staff membership and full privileges in obstetrics and gynecology at Defendant Hospital. He also maintained a medical office in Bad Axe, Michigan. (Compl. at ¶ 8.)

On March 9, 1999, Plaintiff admitted a pregnant 15-year old patient to Defendant Hospital for complications she was experiencing with pregnancy-induced hypertension at almost 35 weeks gestation. (*Id.* at 10.) Following admission, the patient's repeated liver function tests revealed rising liver enzymes, and her complications progressed indicating that she was developing severe pre-eclampsia. (*Id.* at ¶ 12.) Severe pre-eclampsia is a life-threatening emergency medical condition which involves an abnormal increase in a pregnant woman's blood pressure and is the leading cause of maternal and fetal death in the United States. The only definite cure for severe pre-eclampsia is delivery of the fetus and time is of the essence. (*Id.* at 13.)

Plaintiff decided to induce labor and deliver the baby at Defendant Hospital because the patient's emergency medical condition had not stabilized, because her liver function tests continued to increase, and because a physical examination identified that her cervix

was favorable for induction of labor. Plaintiff consulted with a perinatologist at another hospital and with the Chief of the Medical Staff at Defendant Hospital. Both concurred with Plaintiff's decision to induce labor and deliver the baby at Defendant Hospital because transfer of a patient with severe pre-eclampsia to another hospital posed a far greater risk to the patient and her unborn child. (*Id.* at ¶ 14.)

On March 11, 1999, at approximately 9:00 a.m., Plaintiff wrote an order in the patient's hospital record for the nursing staff at Defendant Hospital to administer intravenous Pitocin to induce labor and delivery. (*Id.* at ¶ 17.)

At approximately 10:00 a.m., Plaintiff was called by a nurse at Defendant Hospital informing him that a nursing supervisor had informed her not to start the Pitocin that Plaintiff had ordered. The nurse agreed to give Pitocin to the patient after Plaintiff told her that he would return to Defendant Hospital, rewrite his order for Pitocin, and put a note in the chart that his earlier order was not followed. (*Id.* at ¶¶ 18-19.)

At approximately 10:00 a.m., Defendant Gardner, Defendant Hospital's Chief Executive Officer, called Plaintiff at his office and informed him that his patient was to be transferred to another hospital because she was one day short of Defendant Hospital's policy of limiting elective induction and deliveries to patients with a gestation period of 35-weeks and above. Plaintiff declined to authorize the transfer due to the medical risks involved, told Defendant Gardner about the risks, and was informed by Defendant Gardner that "I don't care if you are the best OB in the country, you are not delivering this patient at my hospital. If you start the Pitocin on her I will be initiating disciplinary action against you." Plaintiff ordered that Pitocin be started, finding this to be in his patient's best interest. (*Id.* at ¶¶ 20-26.)

At approximately 11:00 a.m., Defendant Gardner wrongfully countermanded Plaintiff's order that Pitocin be administered to his patient and instructed nurse employees at Defendant Hospital not to administer the Pitocin. (*Id.* at ¶ 27.)

At approximately 12:00 p.m., Plaintiff saw his patient but was not informed that, contrary to his order, Pitocin had not been administered. (*Id.* at ¶ 28.)

Plaintiff returned to his office and phoned Defendant Hospital several times to inquire about his patient's status but was not informed that the Pitocin had not been administered. The patient remained in the labor and delivery room for approximately ten hours with an unstable emergency medical condition, with no Pitocin, and despite having severe pre-eclampsia and rising liver function tests. (*Id.* at ¶¶ 29-30.)

At approximately 7:45 p.m., Plaintiff arrived at Defendant Hospital and learned for the first time that, even though the patient's liver function tests had continued to increase throughout the day, the Pitocin he had ordered for the patient at 9:00 a.m. had not been administered, and there was no mention in the chart that Plaintiff's order of Pitocin had been ignored. Moreover, the afternoon shift had not been notified about the patient's deteriorating condition or about the events that had occurred during the day shift. (*Id.* at ¶¶ 31-32.)

On March 11, 1999, the patient's emergency medical condition had not stabilized. Defendants had failed to obtain (1) the patient's or her mother's written consent and request for a transfer to another appropriate medical facility, (2) a medical opinion or certification from a licensed physician indicating that the medical benefits of a transfer outweighed its risks, and (3) consent from any other hospital agreeing to accept a transfer. (*Id.* at ¶¶ 35-37.)

At approximately 7:45 p.m. on March 11, 1999, Plaintiff informed his patient and her mother of the options; i.e., transfer with risks or stay and proceed with induction of labor and delivery as planned. The patient and her mother decided to proceed with induction of labor and delivery at Defendant Hospital. Pitocin was administered, and Plaintiff stayed with the patient throughout the night, closely monitoring her medical condition. During this time, the patient's liver function tests increased and platelets maintained approximately 200K, allowing induction to continue. (*Id.* at ¶¶ 38-39.)

On March 12, 1999, the patient delivered a live male infant, weighing 5 pounds, 13 ounces. The baby had no complications, and both baby and mother were discharged, in good condition, on the second day post-partum. (*Id.* at ¶¶ 40-41.)

On March 15, 1999, Plaintiff notified Linda Rowland, Chairperson of Defendant Hospital's Board of Trustees, in writing that he intended to report the March 11, 1999 incident to governmental agencies. Shortly thereafter, Plaintiff reported the incident to various agencies. (*Id.* at ¶¶ 43-44.)

On April 27, 1999, Defendant Hospital enacted a written policy, providing that it would "not accept elective, non-urgent obstetrical patients under 35 weeks gestation. We are licensed and insured as a Level 1 obstetrical facility." (*Id.* at ¶ 42.)

On May 26, 1999, Defendant Hospital's Board of Trustees issued a written reprimand against Plaintiff for violating "the hospital's policy of limiting elective deliveries to patients with a gestation period of 35 weeks and above." Plaintiff was notified of the reprimand in a letter written by Defendant Gardner and dated May 27, 1999. (*Id.* at ¶ 48.)

On September 26, 1999, Plaintiff voluntarily rescinded his full privileges at Defendant Hospital in favor of courtesy medical staff privileges. (*Id.* at ¶ 8.)

Subsequently, said reprimand against Plaintiff was published by Defendant Hospital to Lapeer Regional Hospital, where Plaintiff now has privileges. (*Id.* at ¶ 55.)

More recently, in 2004, said reprimand against Plaintiff was published by Defendant Hospital to Crittenton Hospital in Rochester Hills, Michigan, during Plaintiff's credentialing process, interfering with his attempt to obtain privileges at said facility. (*Id.* at ¶ 56.)

On May 12, 2004, Defendant Hospital denied Plaintiff's request to rescind and retract the reprimand issued on May 26, 1999. (*Id.* at ¶ 57.)

On August 26, 2004, Plaintiff filed this lawsuit.

## II. Motion to Dismiss Standard

A Rule 12 (b) (6) motion to dismiss tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the

complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

### III.  Analysis

In 1986, Congress enacted EMTALA, 42 U.S.C. § 1395dd, "to address a growing concern with preventing 'patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions were stabilized." *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994). The Act "imposes two requirements on any hospital which participates in the Medicare program: (1) the hospital must conduct appropriate medical screening to persons visiting the hospital's emergency room; and (2) the hospital may not, subject to certain exceptions, transfer out of the hospital a patient whose medical condition has not been stabilized." *Brewer v. Miami County Hosp.*, 862 F. Supp. 305, 307 (D. Kan. 1994).

Three provisions of the Act are at issue here. The first, § 1395dd(d)(2)(A), "grants a private right of action to individuals harmed as a result of a hospital's violation of [EMTALA's] requirements." *Id.* The second, § 1395dd(d)(2)(C), requires that such private actions be brought no later than "two years after the date of the violation with respect to

which the action is brought."[1]  The third, § 1395dd(i), provides whistleblower protections, and states that:

> A participating hospital may not penalize or take adverse action against a qualified medical person described in subsection (c)(1)(A)(iii) or a physician because the person or physician refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized or against any hospital employee because the employee reports a violation of a requirement of this section.

Defendants' motion to dismiss argues that Plaintiff's private civil action (a right granted by § 1395dd(d)(2)(A) of the EMTALA) alleging that he suffered personal harm as a direct

---

[1] 42 U.S.C. § 1395dd(d) provides, in pertinent part, that:

   (d)   Enforcement

       (2)   Civil Enforcement

           (A)   Personal Harm

               <u>Any individual</u> who suffers <u>personal harm</u> as a <u>direct result</u> of a <u>participating hospital's violation of a requirement</u> of <u>this section</u> <u>may</u>, <u>in a civil action</u> against the participating hospital, <u>obtain those damages</u> available for personal injury under the law of the State in which the hospital is located, <u>and such equitable relief as</u> <u>is appropriate</u>.

           (B)   Financial loss to other medical facility

                      * * *

           (C)   Limitations on actions

               No action may be brought <u>under this paragraph</u> more than <u>two years after the date of the violation with respect to which the action is brought</u>.

(emphasis added).

result of Defendant Hospital's retaliatory May 26, 1999 reprimand issued against him (a whistleblower entitled to protection under § 1395dd(i)), was filed beyond the two-year statute of limitations period set forth in § 1395dd(d)(2)(C) and is thus time-barred.

Plaintiff, on the other hand, argues that his EMTALA claims are not time-barred. He first argues that his claims alleging personal harm as a direct result of Defendant Hospital's retaliation against him, in the form of a May 1999 reprimand, arise from the whistleblower protections granted in § 1395dd(i) and, accordingly, are not subject to the two-year statute of limitations period set forth in § 1395dd(d)(2)(C). It is Plaintiff's position that, because § 1395dd(d)(2)(C) is expressly limited to an "action brought under this paragraph," it does not apply to actions like his that invoke the whistleblower protections of another paragraph, § 1396dd(i). This Court disagrees.

Plaintiff's argument fails to recognize that, absent the express grant in paragraph 1395dd(d), specifically § 1395dd(d)(2)(A), he could not pursue his EMTALA claims, including those arising under § 1395dd(i). Section 1395dd(d)(2)(A) expressly provides that individuals claiming to have suffered personal harm "as a direct result of a participating hospital's violation of a requirement <u>of this section</u> may, in a civil action against the participating hospital," obtain damages and appropriate equitable relief. *See Fotia v. Palmetto Behavioral Health*, 317 F. Supp.2d 638, 642-43 (D. S.C. 2004) (holding that "[g]iven the express language of 42 U.S.C. § 1395dd(i) and § 1395dd(d)(2)(A), it appears that the intent of the statute is to allow private individuals harmed by EMTALA violations to sue the hospitals that caused the harm. . . . [A]s a whistleblower alleging retaliation, the very gravamen of Plaintiff's complaint is that he has been harmed by a violation of EMTALA.")

9

Contrary to Plaintiff's arguments here, paragraph 1395dd(d) creates a private right of action for individuals alleging a violation of § 1395dd <u>and</u> requires that all such private actions be filed within "two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd(d)(2)(C). The violation on which Plaintiff's EMTALA action is based is the May 26, 1999 reprimand issued against Plaintiff by Defendant Hospital. Because Plaintiff's private civil action asserting EMTALA claims was not filed until August 24, 2004, his EMTALA claims are time-barred and are thus dismissed with prejudice.

Plaintiff next argues that, although the reprimand that gives rise to his EMTALA claims was issued in May 1999, Defendant Hospital's subsequent disclosures of that May 1999 reprimand to other hospitals in August 1999 and in February 2004 were continuing violations of EMTALA by Defendant Hospital. Plaintiff further argues that the judicially created "continuing violation doctrine" applies to his § 1395dd(d)(2)(A) EMTALA claims and thus renders them timely filed. This Court rejects Plaintiff's invitation to create an exception to the two-year statute of limitations period expressly set forth in § 1395dd(d)(2)(C).

Those federal courts considering EMTALA claims have consistently held that the plain language and legislative history of the statute does not permit judicially-created exceptions to the two-year statute of limitations set forth in § 1395dd(d)(2)(C). For example, the *Brewer* court declined the plaintiff's invitation to create an exception to EMTALA's two-year statute of limitations by applying the principles of equitable tolling, finding that such application was not consistent with the plain language of that statute or with congressional intent. It observed that:

10

> While the statute [42 U.S.C. § 1395dd(d)(2)(A)] provides for a private right of action against hospitals, this was not seen as an integral part of the legislation. Congress was concerned that "if penalties are too severe, some hospitals, particularly those located in rural or poor areas, may decide to close their emergency rooms entirely rather than risk . . . damage awards." H.R.Rep. No. 241(III), 99th Cong. 2d Sess. 6 (1985), *reprinted in* 1986 U.S.C.C.A.N. 726, 728. Partly as a result of this concern, amendments were made prior to EMTALA's passage which clarified the private right of action provision and included the two-year statute of limitations. *Id.* Thus, the legislative history, like the plain language of the statute, does not support a finding that principles of equitable tolling should be applied to the EMTALA statute of limitations.

*Brewer*, 862 F. Supp. at 307-08.

Similarly, in *Vogel*, the Fourth Circuit Court of Appeals, refused to adopt an equitable exception to the two-year statute of limitations expressly stated in § 1395dd(d)(2)(C). It reasoned that:

> Exceptions to the running of a limitations period because of the would-be plaintiff's disability, though common, are nonetheless *exceptions*. The blackletter rule, recognized by the Supreme Court since at least 1883, is that a statute of limitations runs against all persons, even those under a disability, unless the statute expressly provides otherwise. . . . This rule is regularly applied to federal statutes that contain a limitations period but no exception for disability.

*Vogel*, 23 F.3d at 80 (internal citations omitted).

Plaintiff's argument for a judicially-created equitable exception to EMTALA's two-year statute of limitations is not supported by the plain language of the statute, its legislative history, or decisions addressing similar requests. Accordingly, Plaintiff's EMTALA claims against Defendants are hereby dismissed with prejudice.[2] Moreover, Plaintiff's remaining state-law claims against Defendants are dismissed without prejudice. Plaintiff has not alleged diversity of citizenship between himself and Defendants, and this Court's

---

[2]Because Defendants' motion is being granted and Plaintiff's claims dismissed, there is no need to address Defendant's additional motion for dismissal under Rule 12(b)(6) based on immunity under 42 U.S.C. § 11111(a)(2). That motion is now MOOT.

11

jurisdiction over the remaining state-law claims is based on supplemental jurisdiction. 28 U.S.C. § 1367(a). Having dismissed Plaintiff's federal claims asserted under EMTALA, this Court declines to exercise jurisdiction over Plaintiff's remaining state-law claims.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss on statute of limitations grounds is GRANTED. Plaintiff's EMTALA claims are dismissed with prejudice, and Plaintiff's state-law claims of defamation and tortious interference with business expectations are dismissed without prejudice.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 31, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

12